J-S13028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.J.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| K.J.D. | |
| Appellee | No. 1667 WDA 2014 |

Appeal from the Order Entered September 19, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD 09-008294-016

BEFORE:  BENDER, P.J.E., MUNDY, J., and STABILE, J.

MEMORANDUM BY MUNDY, J.:                        **FILED JUNE 02, 2015**

Appellant, L.J.D. (Mother), appeals from the September 19, 2014 custody order modifying the custody arrangement between Mother and Appellee, K.J.D. (Father).  Said order granted Mother primary physical custody, Father partial physical custody, and the parties shared legal custody with respect to their daughters, M.S.D. and S.J.D. (collectively, the Children).[1]  After careful review, we affirm.

The certified record reveals an extensive factual and procedural history of the underlying custody matter beginning in July 2009 when Mother filed a divorce complaint.  Father then filed an answer and counterclaim in divorce,

_____

[1] M.S.D. was born in April 2004, and S.J.D. was born in February 2008.

and subsequent complaint for shared custody of the Children.[2] On March 30, 2011, an interim order was entered which granted Mother primary physical custody, and Father partial custody on alternating weekends from Friday at 6:15 p.m. until Sunday at 6:15 p.m., and every Wednesday from 6:15 p.m. until Thursday morning. Interim Custody Order, 3/30/11, at ¶1. In addition, the parties followed a holiday and vacation custody schedule pursuant to an August 29, 2011 interim order. Interim Custody Order, 8/29/11. In April 2013, Father filed a petition for modification of partial custody, and on August 21, 2013, a half-day hearing on the matter was held. A second full-day hearing was scheduled for February 14, 2014. On February 7, 2014 Father filed a petition to discontinue his partial custody and for shared physical custody, wherein, he requested shared or primary physical custody of the Children. Father's Petition to Discontinue Partial Custody Modification/Petition for Shared Physical Custody, 2/7/14, at ¶ 12.

A hearing on Father's petition occurred on August 26, 28, and 29, 2014. Father testified on his own behalf, and he presented the testimony of P.D., his girlfriend; N.S., his cousin who assists him with housework during his custodial time; Susan Berman, Father's "parent coach"; and L.D.S., his mother (Paternal Grandmother). Mother testified on her own behalf, and she presented the testimony of A.W., Father's former girlfriend and the

_____

[2] Mother and Father were divorced in April 2013.

- 2 -

mother of his two-year-old son, T.W.; and J.L., Mother's fiancé. In addition, the parties' oldest child, M.S.D., who was then ten years old, testified *in camera*.

Subsequently, on September 19, 2014, the trial court entered its findings of fact and order, wherein the trial court made 145 findings of fact based on the testimonial evidence. **See generally** Findings of Fact and Order, 9/19/14, at 12-33. The trial court concluded that it is in the Children's best interest to increase Father's custodial time but not to grant him equally shared physical custody. **See id.** at 33, ¶ 208. As such, the trial court increased Father's partial physical custody from eight days per every four-week period to twelve days per every four-week period, as follows. The order awarded Mother physical custody every Sunday from 6:15 p.m. to every Wednesday at 6:15 p.m., Father every Wednesday at 6:15 p.m. to every Friday at 6:15 p.m., and the parties alternating weekends from Friday at 6:15 p.m. to Sunday at 6:15 p.m. Custody Order, 9/19/14, at ¶ 1a. The order also included a holiday schedule and a vacation schedule. **Id.** at ¶¶ 2-3. In addition, the order directed the parties to continue attending co-parenting counseling with Dr. Bob Wilson. **Id.** at ¶ 12. Further, the order granted the parties shared legal custody.[3] **Id.** at ¶ 6.

_____

[3] In addition, the order disposed of a motion for contempt filed by Mother, wherein she accused Father of violating the August 29, 2011 interim order by inappropriately adding four vacation days to his regular custodial period. *(Footnote Continued Next Page)*

On October 14, 2014, Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). On November 5, 2014, the trial court issued an opinion pursuant to Rule 1925(a).

On appeal, Mother presents the following issues for our review.

> I. Whether the trial court committed an error of law and/or abused its discretion by failing to consider all of the factors that affect the "best interest" of the [C]hildren in question and render a comprehensive opinion regarding such?
>
> II. Whether the trial court committed an error of law and/or abused its discretion in failing to consider and give proper weight to all things that affect the "best interest" of the [C]hildren?
>
> III. Whether the trial court committed an error of law and/or abused its discretion in failing to consider certain criteria in determining what is in the best interest of the [C]hildren?
>
> IV. Whether the trial court committed an error of law and/or abused its discretion by making a finding at the conclusion of the hearing that was contrary to the sufficiency of the evidence present[ed]?
>
> V. Whether the trial court committed an error of law and/or abused its discretion by ignoring credible and relevant testimony and critical issues raised without explanation?

_(Footnote Continued)_ _____

**See** Findings of Fact and Order, 9/19/14, at ¶ 211. The trial court found Father in contempt of the order and sanctioned him by giving Mother "priority to choose her vacation custodial periods with the Children in 2015 if the parties' proposed periods overlap." Custody Order, 9/19/14, at ¶ 14.

> VI. Whether the trial court committed an error of law and/or abused its discretion by not carefully weighing and considering the well-reasoned preference of the minor child?

Mother's Brief at 4.[4]

The scope and standard of review in custody matters is as follows.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.
>
> ***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234, 1237 (Pa. Super. 2009) (*quoting* ***Bovard v. Baker***, 775 A.2d 835, 838 (Pa. Super. 2001)).  Moreover,
>
> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child.

---

[4] We have reordered Mother's issues for ease of disposition.

> Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

> ***R.M.G., Jr.***, ***supra*** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. ***Ketterer v. Seifert***, 902 A.2d 533, 539 (Pa. Super. 2006).

***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014) (parallel citations omitted).

Further, we have stated the following.

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006), *quoting* ***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006), *quoting* ***Arnold v. Arnold***, 847 A.2d 674, 677 (Pa. Super. 2004).

- 6 -

Relevant to this custody case are the factors set forth in Section 5328(a) of the Child Custody Act (the Act), 23 Pa.C.S.A. §§ 5321-5340, which provides as follows.

> **§ 5328. Factors to consider when awarding custody.**
>
> **(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> >
> > (2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).
> >
> > (3) The parental duties performed by each party on behalf of the child.
> >
> > (4) The need for stability and continuity in the child's education, family life and community life.
> >
> > (5) The availability of extended family.
> >
> > (6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[5]

This Court has stated that, "[**a**]ll of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original, citation omitted).

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.,*** 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013)….
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.,*** 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, ***supra*** at 822-823. With these standards in mind, we turn to the merits of this appeal.

Mother's arguments on appeal are interrelated. Initially, to the extent Mother's arguments are based on her assertion that Father had the burden

---

[5] The Act was amended, effective January 1, 2014, to include the additional factor at Section 5328(a)(2.1).

of proving that a substantial change in circumstances warranted a change in the physical custody award, Mother's arguments are flawed. *See* Mother's Brief at 13. It is well-settled that custody can be changed "without proof of a substantial change in circumstances when it is shown that the change is in the best interest of the child." *Clapper v. Harvey*, 716 A.2d 1271, 1273 (Pa. Super. 1998), *quoting* *Moore v. Moore*, 634 A.2d 163, 169 (Pa. 1993).

With respect to the Children's best interests, Mother argues that the trial court failed to consider and/or properly weigh all of the evidence and failed to render a comprehensive opinion analyzing the evidence. Mother's Brief at 14, 27. In fact, Mother argues that the custody order resulted from the trial court's bias in favor of Father rather than from the evidence presented. *Id.* at 14.

Specifically, Mother contends that the court failed to consider the Children's best interests by (1) limiting its analysis to the parties' conflict; (2) not considering whether maintaining the status quo was in the Children's best interests; (3) failing to consider that Mother has been the Children's primary caregiver; and (4) failing to consider the strained relationship between M.S.D. and Father. *Id.* at 14-17. In addition, Mother argues that the trial court erred and/or abused its discretion in finding that Section 5328(a)(1) favors Father, *i.e.*, which party is more likely to encourage and permit frequent and continuing contact between the Children and another party. Mother's Brief at 22.

Further, Mother argues the trial court erred and/or abused its discretion with respect to its credibility and weight of the evidence determinations regarding A.W., Father's former girlfriend and the mother of his two-year-old son, T.W., and P.D., Father's current girlfriend. *Id.* at 19-22. Finally, Mother argues that the trial court committed an error of law and/or abused its discretion by not carefully weighing and considering the custody preference of the parties' oldest child, M.S.D., then age ten, who testified *in camera* that she did not want to spend additional time with Father. *Id.* at 12-13; *see also* N.T., 8/29/14, at 280.

Contrary to Mother's assertion, the trial court issued a comprehensive opinion along with the subject order that included the trial court's factual findings and set forth its assessment of all of the Section 5328(a) custody factors. *See* Findings of Fact and Order, 9/19/14. In addition, the trial court issued a Rule 1925(a) opinion wherein it incorporated its September 19, 2014 findings of fact, addressed the pertinent Section 5328(a) factors, and the alleged errors in Mother's concise statement. *See* Trial Court Opinion, 11/5/14, at 7-21. With respect to Mother's allegation that the custody decision is based on the trial court's bias in favor of Father rather than on the record evidence, the trial court responded that Mother's allegation "is baseless. The [trial c]ourt made its decision based on the testimony and other evidence presented by the parties at the three (3) day hearing." *Id.* at 21.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Donald R. Walko, Jr., we conclude that Mother's issues merit no relief. The trial court comprehensively discussed and properly disposed of the questions presented. *See* Trial Court Opinion, 11/5/14, at 1-23. Further, we defer to the trial court's determinations regarding credibility and weight of the evidence. *See A.V.*, *supra*. The record supports the trial court's decision, and we will not disturb it. Accordingly, we affirm on the basis of the trial court's November 5, 2014 Rule 1925(a) opinion, which incorporates the trial court's September 19, 2014 findings of fact. The parties are directed to attach a redacted copy[6] of the trial court's opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2015

---

[6] The copies shall include the redacted names of Mother, Father, the Children, Father's younger son, T.W., and all of the witnesses.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION



L. J. D.

    Plaintiff,         No.: FD 09-008294-016

   v.

K. J. D.

    Defendant.

OPINION

WALKO, J.                 November 5, 2014

   Plaintiff/Mother L. J. D.   (hereinafter referred to as "Mother") appeals this

Court's Order of Court of September 16, 2014. For the reasons set forth in this Opinion, this

Order of Court should be affirmed.

## PROCEDURAL HISTORY

   The procedural history of the above-captioned matter is incorporated by reference to

Paragraphs 1 through 61 of this Court's Findings of Fact of September 16, 2014 as though fully

set forth herein.[1]

   Following a three (3) day hearing before the undersigned held on August 27th, 28th and

29th, 2014, at which time the Court took testimony and evidence regarding Defendant's/ Father's

K. J. D.      (hereinafter referred to as "Father") request for shared custody and

Mother's Motion for Contempt, this Court entered detailed Findings of Fact and the Order of

Court dated September 16, 2014.

---

[1] The procedural history of this case is extensive. The Court will note that over 200 pleadings are filed of record. Relevant to the instant action is Father's Petition for Modification filed in January of 2014. Father sought modification of his periods of partial physical custody as set forth within the March 30, 2011 Order of Court. Subsequently, Mother filed a Motion for Contempt in September of 2014 for Father's purported contempt of the vacation provisions within the August 30, 2011 Order of Court. Mother's Motion for Contempt was consolidated with the three (3) day trial scheduled to address Father's pending Petition for Custody Modification.

The September 16, 2014 Order provides Mother with primary physical custody of the parties' minor children, M. S. D. (DOB: 4/23/04) and S. J. D. (DOB: 2/23/08) (hereinafter referred to as "Children"). Pursuant to this Order, Mother exercises custody of the Children every Sunday at 6:15 p.m. to Wednesday at 6:15 p.m., as well as every other weekend from Friday at 6:15 p.m. to Sunday at 6:15 p.m. The September 16, 2014 Order provides an extension of Father's periods of partial physical custody. Father now exercises custody of the Children every Wednesday at 6:15 p.m. to Friday at 6:15 p.m. In addition, Father exercises custody of the Children every other weekend. His periods of weekend custody are also scheduled from Friday at 6:15 p.m. to Sunday at 6:15 p.m.

In summary, the September 16, 2014 Order of Court effectuates a modification of the physical custody provisions set forth in the March 30, 2011 Order of Court whereby Father exercises an additional four (4) overnights within a four (4) week period. This modification is as illustrated in the physical custody charts set forth below:

**\*March 30, 2011 Physical Custody Schedule:**

| WEEK | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|---|
| 1 | M | M | F Starting at 6:15pm | M Starting after school | F Starting at 6:15pm | F | M Starting at 6:15pm |
| 2 | M | M | F Starting at 6:15pm | M | M | M | M |
| 3 | M | M | F Starting at 6:15pm | M Starting after school | F Starting at 6:15pm | F | M Starting at 6:15pm |
| 4 | M | M | F Starting at 6:15pm | M | M | M | M |

**\*September 16, 2014 Physical Custody Schedule:**

| WEEK | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | Sunday |
|---|---|---|---|---|---|---|---|
| 1 | M | M | F Starting at 6:15pm | F | F | F | M Starting at 6:15pm |
| 2 | M | M | F Starting at 6:15pm | F | M Starting at 6:15pm | M | M |
| 3 | M | M | F Starting at 6:15pm | F | F | F | M Starting at 6:15pm |
| 4 | M | M | F Starting at 6:15pm | F | M Starting at 6:15pm | M | M |

\* "M" symbolizes Mother's overnights. "F" symbolizes Father's overnights.

2

In addition to the modification of the regular physical custody schedule, the parties' prior holiday and vacation schedule set forth within the August 30, 2011 is modified by the September 16, 2014 Order.

The parties will continue to share legal custody of the Children. The Court ordered the continued use of Our Family Wizard to effectively communicate and manage the parties' custody schedule.

The parties are ordered to continue attending co-parenting counseling with Dr. Bob Wilson at least one (1) time per month. Dr. Wilson is to act as a family mediator and co-parenting counselor. The parties are directed to take all custody disputes to Dr. Wilson before bringing them to the Court so long as said disputes do not relate to modification of the current physical custody schedule or issues regarding legal custody of the Children.

Upon consideration of Mother's Motion for Contempt, the Court found Father to be in contempt of the August 29, 2011 Order of Court for his misuse of the vacation provisions set forth within. As a sanction Mother was awarded priority to choose her 2015 vacation periods with the Children.

Mother filed a Notice of Appeal of the September 16, 2014 Order of Court and a Concise Statement of Matters Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) on October 14, 2014.

## STANDARD OF REVIEW

The Pennsylvania Superior Court has stated its standard of review in child custody cases as follows:

> Our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the

3

evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. *S.J.S. v. M.J.S.*, 76 A.2d 541, 547-8 (2013).

## DISCUSSION

Mother raises twenty-one (21) points in her Concise Statement of Errors. The Court notes that Concise Statement of Errors numbered 1, 2, 3 and 5 are not issues to be addressed but are only statements of a portion of the procedural history or rulings in this case.

Concise Statement of Errors Numbered 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 21 are as follows:

4. Although Father's Petition for Shared Custody was not granted, the trial court abused its discretion when it awarded Father modified (sic) the parties' physical custody schedule of (sic) minor children because the Order and Findings of Fact were neither supported nor consistent with the testimony and documented evidence/ exhibits presented.

6. Insufficient evidence was presented to support the trial court's determination that it was in the best interest of the minor children for Father to be awarded additional partial custody.

7. Based upon the evidence and testimony presented, the Findings of Fact and Order issued clearly did not act in the best interests of the minor children.

8. The trial court failed to consider and ignored certain criteria in support of Mother's contention and Father should not be awarded additional custody time of the minor children.

9. The trial court's factual findings are not supported by and inconsistent with the competent evidence and testimony presented during the trial.

10. The trial court disregarded Plaintiff's status as the primary caregiver and nurturing parent.

11. The trial court failed to take into account the effect a change in the status quo custody schedule, previously agreed upon by the parties, and supporting evidence that the minor children and previously thrived in a stable environment.

4

12. The trial court failed to consider the emotional impact on the well being of the minor children resulting from the instability and change in their schedule when in Father's care.

13. The trial court failed to consider the adverse impact that the different custody schedule as issued by the Order would have on the minor children's education and extracurricular activities.

14. The trial court ignored evidence of the lack of communication between the parties, and the extensive effort of Mother to accommodate the minor children's need of parenting time, with very minimal efforts from Father.

15. Prior to one of the minor children testifying, the trial court inappropriately expressed its unsolicited bias, discontent and disagreement with the minor child testifying, which limited examination and inquiry of the minor child's preference by counsel, and then, arbitrarily concluded the minor child's preference was not well reasoned.

16. The trial court disregarded the relevance of Father's nonmarital (sic) relationship on the minor children and adverse impact on the minor children.

17. The Findings of Fact include references to evidence and facts not presented as well as assumed facts inconsistent with what was presented during the trial, specifically related to Father's ability to care for the minor children during the custody times awarded.

18. The trial court, without stating witnesses were not credible, acted in an arbitrary and unreasonable manner by disregarding and failing to address the rebuttal testimony offered by Plaintiff's testimony, evidence and witnesses, which led to an unjust result that clearly was not in the best interest of the minor children.

19. The trial court was clearly bias (sic) in favor of Father, considering the analysis set forth in the Findings of Fact and ultimate determination in the Order and the inconsistencies in reasoning and logic when compared to the evidence and testimony presented during the trial.

20. Despite holding Father in Contempt of Court for taking minor children from an excess period of time in breach of the custody arrangement, the trial court still concluded that Father was more likely to permit frequent and continuous contact with Mother, which was inconsistent with the Court holding Father in Contempt of Court. Related thereto Father being held in Contempt of Court, Father was not required to pay Mother's award (sic) attorneys' fees.

21. The Order and Findings of Fact resulted in an abuse of discretion by Judge Walko that allowed the case to be resolved based upon a clearly erroneous assessment of the evidence and testimony presented, which led to an unjust result that was not in the best interests of the minor children.

5

**The Court did not abuse its discretion in its consideration of the testimony and evidence put forth at the trial, nor did it enter an Order of Court that was not in the best interests of the minor children.**

*(Matter complained of in Appeals #4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18 and 21)*

The Court will address Concise Statement of Errors Numbered 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18 and 21 together. Each and every one of the errors asserted are addressed by the fact that the Court fully considered each and every Custody factor enumerated at 23 Pa C.S.A. Section 5328.

The Court would first like to point out that in each and every one of the Concise Statement of Errors listed above, Mother failed to provide examples within this Court's Findings of Fact that had no support in the record, that were factually imprecise, or that inaccurately portrayed Mother's testimony or the testimony of any other witness. Nor did Mother provide examples of evidence that would support her claims or her assumptions regarding this Court's purported abuse of discretion.

The Court, therefore, cannot respond directly to each these claims made by Mother other than to emphasize that the Court's Findings of Fact were accurate and based solely on the testimony and other evidence of record, and that the Court did not alter or erroneously interpret any of the witnesses' testimony upon which the Findings of Fact is based.

The Court, furthermore, holds that it properly considered the custody factors enumerated at 23 Pa.C.S.A. §5328 and that it correctly determined the Children's best interest in light of these factors.

While the Court finds that its analysis is explained in sufficient detail in its September 16, 2014 Findings of Fact, it summarizes its consideration of the custody factors as follows:

6

<u>Section 5328(a)(1): Which party is more likely to encourage and permit frequent</u>
<u>and continuing contact between the children and another party.</u>

Father credibly testified that the Children will not initiate contact with him during Mother's custodial periods. This testimony was not credibly controverted by Mother. Father's second cousin, N. S. who serves as a "house helper" for Father when the Children are with him, testified that Father does not stop the Children from calling Mother.

When questioned regarding a summer of 2014 cruise with Father and S and Father's actions regarding the Child's contact with Mother, L. D. S. ., (hereinafter "Paternal Grandmother") said "[h]e has always [helped S ] call her mother. I remember on the first cruise we took, he had so much trouble trying to get a ship to shore phone and so on. It was when they would get off the ship that he would try and fix it so they could call their [M]other ...." (TT August 28, 2014, Page 72, Lines 1-5.)

While the Court found that Father is more likely than Mother to encourage and permit frequent and continuing contact between the Children and Mother, the Court recognizes the extremely tense relationship between Mother and Father. The tension no doubt clouds all communication between the Children and the non-custodial parent.

<u>Section 5328(a)(2): The present and past abuse committed by a party or a member</u>
<u>of a party's household, whether there is a continued risk of harm to the children or an</u>
<u>abused party and which party can better provide adequate physical safeguards and</u>
<u>supervision of the children.</u>

7

Based upon credible testimony the Court found that Mother and Father are able to provide adequate physical safeguards and supervision for the Children. The Court also found that there is no credible evidence of abuse committed by either party or a member of a party's household.

Mother's accusations of abuse by Father, as set forth within a Petition for Protection from Abuse filed by her on behalf of M.        , were thoroughly vetted at a hearing on the petition on June 16, 2014. The Court dismissed the Petition after a hearing on June 26, 2014.

The facts alleged in the June, 2014 were again considered by the Court at the time of trial and noted within this Court's Findings of Fact numbered 79 and 80. The Court concluded, as it did in June 2014, that the evidence presented failed to prove that a Protection from Abuse Order was warranted.

The Court considered Mother's testimony and the testimony of Mother's witness, A. W., regarding safety concerns regarding Father's current paramour, P.    D.    and Ms. D.'s  daughter, J.   . Ms. W.   is Father's former paramour and the Mother of his third child, T.       (DOB: 1/26/12).

Mother and Ms. W.   testified that they were concerned that neither Ms. D.   nor her daughter spoke the English language very well and they further expressed concern regarding the impact that a language barrier could have in the event of an emergency if they Children were alone with them. The Court did not find Mother's or Ms. W.   expressed apprehension rational for the following reasons:

1. There was no testimony regarding the Children being left alone with either Ms. D, or her daughter for any significant period of time;

2. Ms. D. credibly testified that she is in the United States to follow up with additional research after she obtained a Masters Degree in China;

3. Ms. D. testified that she is pursuing her education and that she "talks to [her] boss in English."

4. There was no testimony that would prove that Ms. D. could not adequately handle an emergency situation if she was alone with the Children.

5. Father credibly testified that "I think P. speaks English well enough. She is a nurse and has an education background. She would be able to call 911 and say there is a problem." (TT August 26, 2014 (sic)[2], Page 151, Lines 20-23.)

6. The Court will further note that although her English was broken and she showed some signs of struggle with the recognition of certain words, Ms. P. was able to communicate her testimony to the Court and respond to questions by counsel without the use of an interpreter.

In light of the above-listed reasons, the Court finds that the testimony of Mother and Ms. W. were mere speculation.

In further contemplation of this factor, the Court considered the testimony of M. In response to an open-ended question from counsel for Mother, she testified that "...I really don't want anymore time with my dad because he hurts me, and he hurts my feelings emotionally and physically and I want that to stop. And it hasn't." (TT August 29, 2014, Page

---

[2] The title of the transcript filed by Courter Report, Mark Corbin, on October 7, 2014 "PROCEEDING: Custody DATE: August 26, 2014" was titled such in error. The first day of trial, as transcribed within the same, was conducted on August 27, 2014, not August 26, 2014.

9

280, Lines 5-8.)) The Court asked M. "[d]o you think you are spending the right amount of time with your dad now?" M. responded "[y]eah I do. I really don't want anymore time with him at all. I mean, I have trouble with the time I have right now. So unless people want to put more stress on me then I don't know why I would want to have more time with him unless you want to put more stress on me." (TT August 29, 2014, Page 282, Lines 18-25). (M.'s preference will be further discussed below in the discussion of Custody Factor 7.)

The Court did not find M.'s testimony to be credible or logical. First, the Court notes that if there was concern about alleged physical harm, the Court wonders why a reduction of custody or no custodial time at all for Father was not requested. Moreover, the Court believed that the use of the word "stress" was either directly or indirectly coached as Mother used it in her testimony regarding the Children and their relationship with Father: "...I would have to say the relationship that M. and her father have had has produced a lot more anxiety and a lot more stress for M, " (TT August 28, 2014, Page 136, Lines 6-9.)

No credible evidence was presented at trial regarding any physical injuries to M.

### Section 5328(a)(3): The parental duties performed by each party on behalf of the children.

The Court found that Mother performs more parental duties than Father as a result of her position as primary physical custodian of the Children. The Court found, however, that Father is capable of performing more parental duties for the Children if his custodial time is increased.

The Court found that Mother is more involved in helping the Children with their homework, registering them for extracurricular activities, purchasing school supplies, and

10

handling the Children's doctor and dentist appointments. Father credibly testified, however, that he is willing to be more involved if his custody time is increased.

Recognizing Mother's role the Court fashioned a custody plan that has the Children with her on three of five school nights each week. Moreover, the Court's Order continues to provide Mother with more custodial days than Father.

### Section 5328(a)(4): The need for stability and continuity in the children's education, family life and community life.

The Court thoroughly evaluated credible evidence regarding Custody Factor 4 and properly found that the need for stability and continuity in the Children's lives can be appropriately balanced with their need to develop a healthier relationship with their Father.

The Court heard no compelling testimony that the Children's education or extracurricular activities would be interrupted if Father were to be given additional custodial time.

The Court did consider Mother's credible testimony that she is concerned with Father's life choices regarding his choice of paramours and the number of paramours he has had over the last few years. The Court notes that Father is a young man who must balance his social life with the demands of fatherhood and he might not have always acted perfectly.

The Court also considered Mother's choice of paramour in her fiancé J. L.

Mr. L. testified about his criminal history at the hearing. He testified that he pleaded guilty to two DUI charges, one in 2004 and one in 2010. (TT August 29, 2014, Page 193, Lines 24-25 and Page 194, Line 1.)

11

Mr. L. 's Fayette County Court of Common Pleas Court Summary was introduced as Father's Exhibit 13, which is the Fayette County criminal docket report. The report indicates that Mr. L. was charged with Patronizing Prostitutes, Title 18 Section 5902, and that the charges were held for formal arraignment on September 18, 2014.

The Court found that family life might not be perfect in either Mother's or Father's household. The Court further found that both parents are able to provide the Children with stability despite any imperfections in his or her domestic lives.

### Section 5328(a)(5): The availability of extended family:

The Court found the testimony of Paternal Grandmother to be compelling with regard to Father's extended family. She credibly testified that she hoped that "...[Father] gets shared custody because the members of our blended D. / S. family, they work in fields of medicine, law, politics, they are in engineering, in education, in technology, and finance. They are entrepreneurs. They work for corporate America, they started their own businesses, they are artists, they are stay-at-home mothers....If [the Children] are allowed to join us, they have opportunities just to go as high as they want." (TT August 28, 2014, Page 76, Lines 1-8 and 16-18.)

The Court found that based on the credible testimony of Paternal Grandmother and with her leadership, the Children have access through Father to an extended family.

The Court also found that Mother had an available extended family, although her testimony on this subject was brief.

12

The Court found that both parties have extended family available for the benefit of the children.

### Section 5328(a)(6): The children's sibling relationships.

The Court found that the Children have one (1) Paternal Half-Brother, T. W. The Court found that the Children have no other known siblings.

Father credibly testified that the Children and T. get along very well. N. S. credibly testified that the Children "...are in love with T. ." (TT August 26, 2014 [sic], Page 183, Line 3.)

The Court found that the Children have a good relationship with T. , and that an increase in Father's custody time would not change that relationship.

### Section 5328(a)(7): The well-reasoned preference of the children, based on the children's maturity and judgment.

This Custody Factor is addressed within the Court's response to Mother's Concise Statement of Errors number 15.

### The Court did not express bias or inappropriate discontent with the minor child testifying, not did it limit counsel's examination of the child, nor did it arbitrarily conclude that the minor child's preference was not well reasoned.

*(Matter complained of in Appeals #15)*

The Court appropriately noted its concern regarding M. testifying at the trial. While the Court's remarks on the record were unsolicited, they were not biased. Upon counsel for Mother indicating that M. would be the next witness, the Court expressed its concern that the experience of testifying would be traumatic for M. . The Court based its

13

statement on the condition of M.          at the time she testified at the June 2014 hearing on Mother's Petition for a Protection from Abuse against Father. The Court noted for the record that at that time M.          appeared to the Court to be terrified. She was shaking from nervousness, crying, and in tears. The Court relayed this to the parties and counsel.

The Court further noted that the Custody Law requires that it consider"... the well-reasoned preference of children." (TT August 29, 2014 Page 275, Lines 17-18.) The Court's motivation was to protect the Child from undue trauma, and warned counsel to avoid "inappropriate" questioning of the Child. (TT August 29, 2014, Page 275, Lines 24-25 and Page 276, Lines 1-2.)

With the cautionary notice to the parties, the Court directed that counsel proceed. It should be noted that counsel for Mother asked for the opportunity to talk with M.          prior to her entering the courtroom. The request was granted. No objection to the comments of the Court was made. The issue is, therefore, waived.

Even though the issue is waived, the Court notes that counsel for Mother questioned M.          Counsel for Father and the Court also asked questions. The Court did not cut off questions at any point, as the Child appeared to be comfortable and no unsuitable testimony was being solicited by counsel. The Court made no cautionary comments in Court in the presence of M.          . Counsel for Mother and counsel for Father were allowed to ask as many relevant questions as they deemed necessary.

M.          proceeded to testify:

> Q (Mother's counsel): First, tell me how you feel about being here today sitting in this court room? How do you feel about that?

14

A (M.     ):  Honestly, I feel pretty good about it. I'm very --- I pulled this together and I feel great. I feel very confident about myself and I'm really happy to be here so I can speak. (TT August 29, 2014, Page 279, Lines 20-25 and Page 280, Line 1)

Q (Mother's counsel):  What would you like to tell the Judge today?

A (M.     ):  I would like to tell him that I don't really want any more time with my dad because he hurts me, and he hurts my feelings emotionally and physically and I want that to stop. And it hasn't. (TT August 29, 2014, Page 280, Lines 5-8.)

The Court finds that M .     responses of "happy" to be in Court and "I feel great" were made in direct response to the cautionary comments of the Court even though she was not present for them.

In response to questions from the Court M .     testified:

Q (The Court):  Does your dad go to your soccer games?

A (M.     ):  No, not unless it's usually like --- not unless --- he doesn't come to my soccer games period except for when it's like before court or something.

Q (The Court):  How do you know it's before court?

A (M .     ):  Like sometimes I'll meet with maybe like K.     [, Mother's counsel,] or something because he will tell me like sometimes I have to testify or something. (TT August 29, 2014, Page 282, Lines 2-7.)

The Court found it unlikely that M .     would track Father's attendance at soccer games in relation to upcoming court appearances. The Court further found it less than believable that an eleven year old child who is involved in a soccer match would keep track of the attendance of the non-custodial parent at the event and then tie it to an upcoming court appearance without the assistance of an adult.

15

The Court found M.'s testimony to be coached or otherwise not well-reasoned. If she is being physically hurt by Father the Court wonders why she would testify that she is "...comfortable with the time we have now...." (TT August 29, 2014, Page 283, Lines 4-5.) The testimony seems to the Court to be a specific response to the petition of Father. This Child seems to have a high degree of knowledge about the ongoing custody dispute, which is troubling to the Court.

The Court believes that M.'s statement regarding custody time with Father indicates that she was aware of Father's specific request for shared physical custody and she was furthermore aware of Mother's counter-proposal to maintain the status quo custody arrangement. M. appeared to this Court to be specifically responding to Father's custody proposal and parroting Mother's position regarding the same, and not responding in a natural manner.

In any event, the testimony of the Child was fully and completely considered by the Court. The Court's finding in this regard was not, therefore, "arbitrary."

**Section 5328(a)(8): The attempts of a party to turn the children against the other party, except in cases of domestic violence where reasonable safety measures are necessary to protect the children from harm.**

The Court found that Mother may have attempted to turn the Children against Father and that Father has not made similar attempts.

The Court heard credible testimony from N. S. that Father never speaks poorly of Mother. She testified that "[h]e doesn't even talk about her when the girls are present.

16

If I say something, he will be like 'No, she is doing the best she can.' He is very, very respectful." (TT August 26, 2014 (sic), Page 177, Lines 2-5.)

Father credibly testified that "... the Children are in 'Mommy Mode'" when they enter his custody. (TT August 26, 2014, (sic) Page 20, Lines 21-22.) He described "Mommy Mode" as the Children not wanting to go with him with M.      sometimes becoming belligerent. Father further credibly testified that the Children usually relax after spending some time with him.

Mother testified that she corrects the Children in public if they speak poorly of Father. She did not, conversely, indicate that she corrects the Children if they speak poorly of Father in private. Mother was asked on cross-exam "Does that mean, would you agreed then, that you did not correct them, if they spoke disrespectfully abut their father in private?" (TT August 29, 2014, Page 218, Lines 10-12.) Mother responded that "[she] used to correct them all the time but..." (TT August 29, 2014, Page 218, Line 13.) The Court thereby concluded that Mother allows this behavior to occur in private settings.

The Court found no credible evidence about Father attempting to turn the Children against Mother was presented.

**Section 5328(a)(9): Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the children adequate for the children's emotional needs.**

The Court found that both parties are likely to maintain loving, stable, consistent and nurturing relationships with the children adequate for their emotional needs.

17

Paternal Grandmother credibly testified that "when [the Children] are with their daddy, when I have seen them, they love their daddy, they want to hold his hand whenever they are walking, they hug him, they sit on his lap, they want to sit next to him when we sit down at the dinner table." (TT August 28, 2014, Page 65, Lines 2-8.)

N. A. S.                        , Father's second cousin and house helper, testified regarding her observations when Father has custody of the Children.

Her testimony is as follows:

> Q (Counsel for Father): ...are the girls physical with K      ?
>
> A (N      ): Yes, they climb all over him all the time. And at least once every time they get together, there is, I want to say, like a wrestling match thing that happens. But it's all giggling for like 45 minutes, there is all this giggling." (TT August 28, 2014, Page 37, Lines 14-20.)
>
> Q (Counsel for Father): One last question. Have you seen [Father] and M        hug?
>
> A (N.    ): Yes, that's very common. (TT August 28, 2014, Page 38, Lines 3-5.)

Ms. S.              testified regarding circumstances surrounding the Protection from Abuse hearing that was held in the summer of 2014 and the attitude of the Children following custody exchanges.

> Q (Counsel for Mother): The kids always seem like they want to be there is your opinion?
>
> A (N.    ): No. Do you remember I also had said that when the kids first get there they are grumpy, it takes a while to get past the whole custody exchange. And there are times that, there was one time before the whole PFA thing that M.        said she didn't want to be there, but then half an hour later she was playing, happy in the pool, laughing and joking around. ( TT August 28, 2014 Page 50, Lines 1-10.)

18

The Court found Ms. S.'s     testimony to be credible.

Father presented no evidence that would prove that Mother was not likely to provide for the emotional needs as contemplated in Custody Factor 9. Based upon Mother's credible testimony, the Court finds that Mother does, indeed, meet those needs.

Father presented substantial credible evidence that he would do so as well. The Court refers to Findings of Fact numbered 145 through 155.

### Section 5328(a)(10): Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the children.

The Court found that Mother and Father are equally likely to attend to the daily physical, emotional and special needs of the Children. While the Court found that Father had not been "hands on" with the educational needs of the Children, the Court also found that he credibly testified that he is willing to be more involved in it.

Mother credibly testified Father is "scatterbrained" and that she is very organized and that she "spoon feeds [Father in order for him] to be a success..." (TT August 28, 2014, Page 166, Lines 10-12.) The Court found that Mother is more organized than Father. The Court also found that Father credibly testified that he is making an effort to be more organized regarding school uniforms, doctor and dentist appointments and homework.

### Section 5328(a)(11): The proximity of the residences of the parties.

The Court found that the proximity of the residences of the parties was not an issue is this case.

19

Section 5328(a)(12): Each party's availability to care for the children or ability to make appropriate child-care arrangements.

The parties did not present significant conflicting evidence regarding this custody factor. The Court found that both parties would be available to care for the Children or be able to make appropriate child-care arrangements if Father's custodial time was increased.

Section 5328(a)(13): The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect children from abuse by another party is not evidence of unwillingness to cooperate with that party.

Court found that the level of conflict between the parties is high, and that they have a very difficult time communicating and cooperating with one another. The evidence as detailed in Paragraphs 189 through 197 in this Court's Findings of Fact of September 16, 2014 clearly substantiates the Court's conclusion. The Court further found that the parties' inability to communicate effectively is the root cause of their difficulties concerning the extracurricular activities of the Children.

In light of its findings the Court ordered that co-parenting counseling with Dr. Bob Wilson would continue. The Court also ordered that the parties will take all custody disputes that do not relate to the physical custody schedule or to legal custody to Dr. Wilson before bringing the dispute to Court.

Section 5328(a)(14): The history of drug or alcohol abuse of a party or member of a party's household.

20

The Court found that neither party presented evidence of drug or alcohol abuse of a party or member of a party's household.

There was evidence that Mother's paramour, J. L., who stays with Mother and the Children approximately ten (10) days per month, pleaded guilty to two (2) counts of DUI. He further testified that he is not an alcoholic.

The Court considered Mother's paramour's convictions, but found that he does not pose a threat of harm to the Children.

**Section 5329(a)(15): The mental and physical condition of a party or member of a party's household.**

No evidence was presented regarding the mental or physical condition of a party or member of a party's household.

**Section 5328(a)(16): Any other relevant factor.**

The Court found that the best interest of the Children had been fully considered with the application of Custody Factors 1 though 15.

**The Court was not biased in favor of Father, nor was the Court biased against Mother.**
*(Matter complained of in Appeal #19)*

Mother's allegations of bias by the Court are baseless. There is not one scintilla of evidence in the record that the Court exercised its decision-making power with partiality toward Father and bias against Mother. The Court made its decision based on the testimony and other evidence presented by the parties at the three (3) day hearing. The evidence clearly shows that

21

Father's custodial time should be increased form eight (8) days per four (4) week period to twelve (12) days per four (4) week period.

**The Court appropriately found Father in Contempt of Court for not adhering to the Custody schedule for the summer of 2014. The Court consequently imposed a reasonable sanction on Father by ordering that Mother with priority of vacation dates in 2015.**

*(Matters complained of in Appeal #20)*

Regarding the Court's finding that Father was more likely to permit frequent and continuous contact, the Court found that the contempt focused on one issue relating to vacation time in 2014. The Court found that the vacation issue was not tied to the issue of contact between the parents and the Children.

Regarding the issue of counsel fees, the Court found that Father extended his vacation in the summer of 2014 in violation of the intent of the August 29, 1011 Custody Order of Court, which provided that "[e]ach parent shall have two (2) non-consecutive weeks of summer vacation with the Children." Father violated the Order by "tacking" vacation days onto his regular partial custody days. The result was that he had on ten (10) day vacation and one (1) eight (8) day vacation with the Children.

The Court agreed with Mother's interpretation that "two (2) non-consecutive weeks" means two (2) non-consecutive seven (7) day periods. The Court notes, however, that the Custody Order was not explicit in that regard, and found that Father interpreted the Agreement to support his actions. The Court did not, therefore, find Father's conduct to be obdurate, vexatious or dilatory to support a sanction of counsel fees. Father was instead sanctioned by granting Mother first vacation choice for 2015.

22

The sanction was appropriate as it was one that Mother requested. Mother state "... I would ask that I would have consideration from the Court that I would have first choice on vacation times for 2015." (TT August 28, 2014, Page 173, Lines 19-22.)

For the foregoing reasons, this Court September 16, 2014 Order of Court should be affirmed.

BY THE COURT:

_____

Donald R. Walko, Jr., Judge

23

## PROOF OF SERVICE

I hereby certify that on this 8th day of December 2014, I a true and correct copy of the within Brief of Appellant and Reproduced Service. and this Proof of Service was served upon the persons and in the manner indicated below, which service satisfies the requirements of Pa.R.A.P. 906 via first class mail, postage prepaid to the following:

The Honorable Donald Walko
Family Court Facility
440 Ross Street, 1st Floor
Pittsburgh, PA 15219
*Court of Common Pleas Trial Judge*

Sally A. Thomas, Esquire
310 Grant Street
Suite 1125 Grant Building
Pittsburgh, Pa 15219-2302
*Attorney for Defendant*

HOLMES LAW GROUP, LLC


Keenan Holmes, Esquire
Counsel for Appellant, L. D.